WILLIAM HARMON

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa June 13, 1884.*

1. ORDINANCE—*without a penalty—effect upon prosecution under another ordinance for the same offence.* A section of a city ordinance which declares certain acts within the city to be a public nuisance, but provides no penalty for an infraction of its provisions, is no evidence in a prosecution for the same acts made punishable by another section or ordinance complete in itself.

2. SAME—*and ordinance to suppress a nuisance, and providing a penalty—validity.* An ordinance of the city of Chicago that "the owner or owners of any boat or locomotive engine, and the person or persons employed, as engineer or otherwise, in the working of the engine or engines in said boat, or in operating such locomotive, and the proprietor, lessee and occupant of any building, who shall permit or allow dense smoke to issue or be emitted from the smoke-stack of any such boat or locomotive, or the chimney of any building, within the corporate limits, shall be deemed and held guilty of creating a nuisance, and shall, for every such offence, be fined in a sum not less than five nor more than fifty dollars:" *Held,* to be valid and enforcible.

3. NUISANCE—*smoke in a city—whether a nuisance—and whether a nuisance must be so declared.* If the effect of dense smoke emitted from a smoke-stack or chimney is detrimental to certain classes of property and business within the limits of a city, and is a personal annoyance to the public at large within the city, it is a public nuisance, whether so declared by ordinance or not. Unless such in fact, the act of so declaring it will not make it a public nuisance.

4.  CONFLICT OF LAWS—*smoke from tug-boats in Chicago river—prohibition by a city ordinance—whether a regulation of commerce.*  An ordinance of the city of Chicago, making the owners, etc., of tug-boats, engines, etc., liable for allowing the emission of dense smoke from their smoke-stacks, is not in violation of section 8, article 1, of the Federal constitution, which declares that "Congress shall have power to regulate commerce," etc.  Such a regulation by the city does not impose any restraint on the use of such vessels, although engaged in general commerce, other than is consistent with law.  Controlling the use of tug-boats in towing in and out vessels from the harbor, is in no sense in conflict with the power existing in Congress to regulate commerce with foreign nations and among the several States.

5.  SAME—*as to State and Federal jurisdiction.*  Where a conflict may arise between a State and the general government as to legislation committed to Congress, Federal authority must always prevail, for the reason that legislation in pursuance of the Constitution of the United States is the supreme law of the land.  In some instances the State and general government may exercise concurrent jurisdiction in certain matters, and until the general government sees proper to act, State legislation is warranted, and the power of the State over such subjects is plenary.

6.  The existence of a power in Congress to control harbors, and the towing in and out merchant vessels engaged in commerce with foreign nations and with the several States, does not of itself prevent local legislation for the security of property, and the health, comfort and convenience of the people in a municipality.  It is only repugnant and interfering State legislation that must give way to the paramount laws of Congress constitutionally enacted.

7.  POLICE POWER OF THE STATE—*to what it extends—and to whom it may be delegated.*  A State has all power necessary for the protection of the property, health and comfort of the public, and it may delegate this power to local municipalities in such measure as may be deemed desirable for the best interests of the public; and the State may resume it again when deemed expedient.

8.  JUDICIAL NOTICE—*as to organization of city of Chicago—location of Chicago river—and denseness of population.*  This court will take judicial notice of the fact that the city of Chicago is organized under the general "Act to provide for the incorporation of cities and villages," in force July 1, 1882; and also that the Chicago river is situated in the midst of the city, where a dense population exists, and near which much of the business of the city is transacted.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Criminal Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

This suit was originally commenced by the city of Chicago, against William Harmon, in the police court of the city for the first district, for creating a nuisance, by permitting or allowing a "dense smoke" to issue from the smoke-stack of the steam tug-boat "Tom Brown," owned by defendant, and which, at the time, he was operating in and about the Chicago river, within the corporate limits of the city, in violation of sections 1650 and 1651 of an ordinance entitled "An ordinance for revising and consolidating the general ordinances · of the city of Chicago," passed April, 1881.   On the trial in the police court, defendant was found guilty, and fined in the sum of fifty dollars.   A trial *de novo* was had in the Criminal Court, on the appeal of the defendant, where the case was submitted on an agreed statement of facts, and where the defendant was again found guilty, and a fine in the same amount imposed.   That judgment was affirmed in the Appellate Court for the First District, and a majority of the judges of that court having certified the case, in their opinion, involves questions of law of such importance, on account of principal and collateral interests, as that it should be passed upon by the Supreme Court, defendant brings the case to this court on his further appeal.

Mr. WILLIAM ARMSTRONG, for the appellant:

What powers included in the police power:   4 Blackstone's Com. 162;  Cooley's Const. Lim. 572, 573, 576;  *Thorp* v. *Rutland and Burlington R. R. Co.* 27 Vt. 149;  *Railroad Co.* v. *Husen,* 5 Otto, 470.

The ordinance is in excess of the police powers vested in the State, and an interference with inter-State commerce as well as commerce with foreign nations.   *Railroad Co.* v. *Husen,* 5 Otto, 465;  *Salzenstein et al.* v. *Marvin,* 91 Ill. 391;  *Yeazel* v. *Alexander,* 58 id. 254.

That the Chicago river is a navigable stream, and hence a public highway, is clear.   Cooley's Const. Lim. 589.

As to what are nuisances, and their kinds, counsel cited and commented upon 3 Blackstone's Com. 215; 1 Hawkins' Pleas of the Crown, 362; *Commonwealth* v. *Howe*, 13 Gray, 26; *Commonwealth* v. *Hart*, 10 id. 465; *Commonwealth* v. *Davis*, 11 id. 48; *Commonwealth* v. *Floyd*, id. 52; Wood on Nuisances, secs. 24, 47, 80, 477, 607; *Ely* v. *Supervisors*, 36 N. Y. 297; *The State* v. *Hand*, 7 Iowa, 411; *Commonwealth* v. *Van Lichts*, Bright, (Pa.) 69; *Attorney General* v. *Stewart*, 20 N. J. Ch. 417; *Aldrich* v. *Howard*, 7 R. I. 87; 8 id. 246; *Burdet* v. *Swenson*, 17 Texas, 487; *Kirkman* v. *Handy*, 11 Humph. 406; *Coker* v. *Birge*, 10 Ga. 336; *Dunmuil* v. *Dupont*, 18 B. Mon. 800.

As to the power of cities and towns to declare certain things nuisances: *Winford* v. *The People*, 14 Mich. 41; *Austin* v. *Murray*, 16 Pick. 125; *Goddard* v. *Jacksonville*, 15 Ill. 588; *Roberts* v. *Ogle*, 30 id. 459; *Town of Lake View* v. *Litz*, 44 id. 81; *Chicago, Rock Island and Pacific R. R. Co.* v. *Joliet*, 79 id. 25; *North Chicago City Ry. Co.* v. *Lake View*, 105 id. 207; *The State* v. *Jersey City*, 5 Dutch. 171.

Mr. F. S. WINSTON, Corporation Counsel, for the appellee:

The court will take judicial notice of the fact that the city of Chicago is organized under the general Incorporation act. *Potwin* v. *Johnson*, 106 Ill. 452.

Assuming the tug of appellant to be engaged in "commerce between the States," yet the ordinance in question is a local police regulation, which the State of Illinois, and the city by authority of the State, have full power to make; and the exercise of such power is not in conflict with section 8, article 1, of the Federal constitution. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Conway* v. *Taylor*, 1 Blackf. 603; *License cases*, 5 How. 504; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Crandall* v. *Nevada*, 6 id. 35; *Railroad Co.* v. *Fuller*, 17 id. 560; *Osborne* v. *Mobile*, 16 id. 479; *Transportation Co.* v. *Chicago*, 9 Otto, 643; *Foster* v. *Port of New Orleans*, 94 U. S. 248; *Packet Co.* v. *Board*

*of Trustees,* 105 id. 559; *Escanaba Transportation Co.* v. *Chicago,* 107 id. 185; *Chicago* v. *McGinn,* 51 Ill. 266; *Wiggins Ferry Co.* v. *East St. Louis,* 102 id. 560.

The power to declare what is a nuisance, and to abate the same, is a valid power.    *Goddard* v. *Jacksonville,* 15 Ill. 588; *Prest et al.* v. *Holland,* 19 id. 271; *Block* v. *Jacksonville,* 36 id. 301; *Roberts* v. *Ogle,* 30 id. 459; *King* v. *Davenport,* 98 id. 305; *North Chicago City Ry. Co.* v. *Lake View,* 105 id. 207.

Dense smoke is a nuisance *per se.*    *Wahle* v. *Reinbach,* 76 Ill. 322; *Cooper* v. *Randall,* 53 id. 54; *Cleveland* v. *Citizens' Gas Light Co.* 20 N. J. Eq. 205; *Ross* v. *Butler,* 19 id. 294; *Rhodes* v. *Dunbar,* 58 Pa. St. 275; *Galbraith* v. *Oliver,* 3 Pitts. 79; *Catlin* v. *Valentine,* 9 Paige, 675; Wood on Nuisances, chap. 13.

The discretionary power given to the council to declare what shall constitute a nuisance, will not be judicially interfered with unless its exercise be manifestly unreasonable and oppressive.    Dillon on Mun. Corp. (3d ed.) sec. 379; *North Chicago City Ry. Co.* v. *Lake View,* 105 Ill. 207.

The ordinance in question is a valid exercise of the police power of the city.    *Ohio and Mississippi R. R. Co.* v. *McClelland,* 25 Ill. 140; *Galena R. R. Co.* v. *Appleby,* 28 id. 283; *Dingman* v. *The People,* 51 id. 278; *Northwestern Fertilizing Co.* v. *Hyde Park,* 70 id. 634, affirmed in 98 U. S. 659; Dillon on Mun. Corp. (3d ed.) sec. 141, *et seq.;* Cooley's Const. Lim. sec. 572, *et seq.*

As to the exception in section 1650 of the ordinance, appellee contends that that does not apply to the smoke-stack of any boat or locomotive; and even were the exception illegal, yet the balance of the section would be valid.    Cooley's Const. Lim. sec. 178; *Knox County* v. *Davis,* 63 Ill. 405.

But it makes no difference whether that section was valid or not, for the reason that it prescribed no fine, and was simply a definition; and besides, the following section, 1651, was complete in itself, and under that alone was the fine imposed.

Mr. GEO. MILLS ROGERS, also, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Only two sections of the ordinance which it is alleged was violated were introduced in evidence. So far as anything appears in the record, they seem to have no necessary connection with each other. Section 1650 declares: "The emission of dense smoke from the smoke-stack of any boat or loco-motive, or from any chimney, anywhere within the city, shall be deemed and is hereby declared to be a public nuisance: *Provided,* that the chimneys of buildings used exclusively for private residences shall not be deemed within the provision of this ordinance." It will be perceived this section provides no penalty for any infraction of its provisions. At most it would seem to be a definition of what the common council regarded as a "public nuisance,"—nothing more. The case will be considered as though this section of the ordinance had not been introduced in evidence.

Section 1651 seems to be complete in itself, and it was under its provisions a fine was imposed on defendant. It is the only section of the ordinance in evidence that imposes any penalty for a violation of its provisions. It is as follows:

"The owner or owners of any boat or locomotive engine, and the person or persons employed, as engineer or otherwise, in the working of the engine or engines in said boat, or in operating such locomotive, and the proprietor, lessee and occupant of any building, who shall permit or allow dense smoke to issue or be emitted from the smoke-stack of any such boat or locomotive, or the chimney of any building, within the corporate limits, shall be deemed and held guilty of creating a nuisance, and shall, for every such offence, be fined in a sum not less than five dollars nor more than fifty dollars."

Considering these sections of the ordinance as distinct and independent provisions, having no necessary connection with

each other, the criticism made upon section 1650, that it excepts certain persons and property from its operation, and therefore conflicts with that provision of the constitution of the State which declares the General Assembly shall not pass any local or special laws in certain enumerated cases, among which is, "granting to any corporation, association or individual any special or exclusive privilege or immunity or franchise whatever," and is for that reason void, can have no application to section 1651, just quoted. It is general in its provisions, and embraces all persons and property within the limits of the corporation, and imposes the same penalty upon all persons guilty of "creating a nuisance," as therein specified.

It is said section 1651 is leveled against a private nuisance, and can not therefore be the subject of a public prosecution on behalf of the municipality, as a public nuisance might be. Conceding, as is done by the admission in the record, the effect of "dense smoke" emitted from a smoke-stack or chimney "is detrimental to certain classes of property and business within the limits of the city of Chicago, and is a personal annoyance to the public at large within the city," it is a public nuisance, in the midst of a large and densely populated city, whether it is so declared by ordinance or not. Unless it was so in fact, the act of declaring it to be a public nuisance would not make it so. Omitting so to declare, it is none the less a public nuisance. Certainly anything that is detrimental to certain classes of property and business in a populous city, and is a personal annoyance to the public at large within the city, needs not to be defined by ordinance or by lexicographers to be known to the common mind as a public nuisance. It is so *per se*. The nuisance the party is forbidden by this section of the ordinance to create within the limits of the city, will be treated, in the further consideration of the case, as a public nuisance, and as much subject to legislative control, as if it had been defined by ordinance to

be a public nuisance. Nor will any subtle distinctions be indulged as to what is meant by "dense smoke," as those terms are used in the ordinance. The terms used will be understood as commonly employed, and this court will understand by "dense smoke," precisely what everybody else does that has ever seen a volume of dark, dense smoke as it comes from the smoke-stack or chimney where common soft or bituminous coal is used for fuel in any considerable quantities.

Passing now to consider what more nearly affects the merits of the case, it is insisted section 1651 of the ordinance conflicts with section 8, article 1, of the constitution of the United States, which declares: "Congress shall have power to regulate commerce with foreign nations and among the several States, and with the Indian tribes,"—at least so far as it applies to tug-boats plying in the Chicago river, which is a navigable stream, under the laws of the United States. This objection implies a misconception of the scope and purpose of the ordinance. Undoubtedly these tug-boats are, in a limited sense, engaged in commerce among the States, and perhaps with foreign nations. They run out of the river and harbor at the port of Chicago, and tow in large vessels freighted with the products of other States and of foreign nations. Without their use it would be difficult, and perhaps impracticable, for these great vessels with their cargoes to get into or out of port. Although limited to the port of Chicago, the services of these tug-boats are very valuable in moving the goods and products of the States and foreign nations seeking a market at Chicago and elsewhere in the west. But does this ordinance impose any restraint on the use of such vessels, although engaged in general commerce, other than is consistent with law? It is thought it does not. At most it purports only to regulate their use in such manner as may not produce effects detrimental to property and business, nor become a personal annoyance to the public at large

within the city,—and that is allowable to be done. Two sources of power for regulating the use of steam tug-boats in the harbor and river are discoverable: First, the city, by direct grant of power from the State, has the right to make regulations in regard to the use of harbors, towing of vessels, opening and passing of bridges; and second, the police power inherent in the State,—that power under which everything necessary to the protection of the property of the citizen, and the health and comfort of the public, may be done.

Controlling the use of tug-boats in towing in and out vessels to and from the harbor, is in no sense in conflict with the power existing in Congress to regulate commerce with foreign nations and among the several States. That is very far from an attempt to regulate commerce. It is but stating what is a matter of common observation, that "dense smoke" is caused by the kind of fuel used in furnaces and fire-boxes. One kind may produce smoke of such density as to be hurtful to the public comfort in populous cities or villages, and another kind may produce no such effect. Regulating the use of fuel, or, what is the same thing, requiring owners or managers of tug-boats to so use their vessels as not to create a dense smoke, which it is conceded would be an annoyance to the public at large, is in no sense imposing any restraints upon commerce, nor does it in any manner conflict with the power of Congress under what is called the "commerce clause" of the constitution of the United States. The delegated power in the city is broad enough to warrant the passage of the ordinance, but back of that is the question, what may the State rightfully do in such matters? It will be conceded the municipality can do nothing the State can not authorize it to do, and that all power a municipal corporation created by special or general laws may exercise emanates from the State creating it. What powers, then, reside in the State? It has all power necessary for the protection of the property, health and comfort of the public, and

that power has been so frequently defined by this court it is not necessary to restate it. Its power, in this respect, the State may delegate to local municipalities, and in such measure as may be deemed desirable for the best interests of the public, and the State may resume it again when deemed expedient. It is a familiar principle the State has power to make all needful regulations to secure and promote the peace, health, comfort and convenience of the people. It often happens, in legislating upon subjects in relation to the peace, health or convenience of the people at large, State legislation approaches near to powers committed to the general government, and especially in matters relating to the construction of roads, canals and bridges, and other kindred affairs. It seems to be conceded, by a uniform line of decisions, that legislation in respect to matters affecting only certain localities, and not affecting the whole people of a country in any considerable degree, will be committed to local municipal government. Being more immediately interested, such local governments occupy a position to enable them to adopt measures wisely adapted to the end to be secured. In some instances the State and general governments may exercise concurrent jurisdiction in certain matters, and until the general government sees proper to act, it is understood State legislation is warranted,—otherwise matters pertaining to local police regulations might be wholly neglected, to the great injury of the public. Frequent examples of the concurrent powers of the State and general governments are noticeable in the construction of bridges on post roads and over navigable streams. It is thought such structures can be best regulated, especially in large cities, by the State, or by local municipal authorities upon whom the duty may be devolved. In such matters, until Congress assumes to act, the power of the State over such subjects is understood to be plenary. Where a conflict might arise between the State and the general government in regard to such sub-

jects, Federal authority must always prevail, for the reason legislation in pursuance of the constitution of the United States is the supreme law of the land.

It is not claimed that Congress has assumed, under the power it is conceded to have to regulate commerce with foreign nations and among the several States, to enact any laws relating to towing in and out vessels engaged in commerce to and from the port of Chicago, and concerning the matters embraced in this ordinance. Such matters pertain to local government, with which it is hardly probable Congress will ever assume to interfere. The law on this subject is well expressed by Mr. Justice FIELD, in *Escanaba Co.* v. *Chicago,* 107 U. S. 678, where it is said the general doctrine now firmly established is, "the commercial power of Congress is exclusive of State authority only where the subjects upon which it is exercised are national in their character, and admit and require uniformity of regulation affecting alike all the States." The regulations concerning local ports, notwithstanding a general control over them for all commercial purposes is conceded to be in Congress, is wisely left with the State authorities within the limits of which such ports are situated. The non-action of Congress in such matters may be regarded as a declaration the States or the municipal authorities on which the duty may be devolved may be left free to make all needful regulations in respect to wharf-boats, tug-boats and other boats used within the harbors within their respective jurisdiction, and also regulations in respect to the use of such harbors in towing of vessels and the opening and passing of bridges ; and with the exercise of such powers by the local municipal authorities Congress has not interfered when such regulations were thought to be necessary to the protection of property or the comfort and convenience of the people. It does not affect the validity of this ordinance that it might be repugnant to the existence of a power in Congress to regulate commerce with foreign nations and among the several

States. Were it repugnant to any act of Congress on the same subject, an objection for that reason might possibly have to be sustained, for, as just stated, all legislation in pursuance of the constitution of the United States is the supreme law of the land. But Congress has passed no such law, and it will be time enough to consider that question when it arises. It is not true that all powers granted to Congress are exclusive unless where concurrent authority is reserved to the States; nor is it correct, in every instance, to say, "that within the scope Congress may legislate, the States may not legislate." Such is not the law. (*Dunne* v. *The People*, 94 Ill. 120.) The existence of a power in Congress to control the harbor, and the towing in and out of merchant vessels engaged in commerce with foreign nations and with the several States, does not, of itself, prevent local legislation for the security of property, and the health, comfort and convenience of the people in a municipality. It is only repugnant and interfering State legislation that must give way to the paramount laws of Congress constitutionally enacted.

But there is another ground on which this ordinance may be maintained in its application to "dense smoke" emitted from the smoke-stack of any boat or locomotive, or from the chimney of any building, within the corporate limits of the city. This court will take judicial notice of the fact the city of Chicago is organized under the general "Act to provide for the incorporating of cities and villages," in force July 1, 1872, and by law the city council may, among its other legislative powers, have authority "to declare what shall be a nuisance, and to abate the same, and to impose fines upon parties who may create, continue, or suffer nuisances to exist." Under the power granted by the State the city council has provided, by ordinance, "that any one who shall permit or allow dense smoke to issue or be emitted from the smoke-stack of any * * * boat or locomotive, or the chimney of any building, within the corporate limits, shall be

deemed guilty of creating a nuisance, and shall for every such offence be fined in a sum not less than five nor more than fifty dollars." It will be observed the power conferred on municipal corporations is not to declare what may be a "public nuisance," or a "nuisance *per se*," but it is to declare what shall be a "nuisance," and to abate the same. Whether it would be sufficient to warrant a conviction to simply prove the fact "dense smoke" issued from the smoke-stack of a boat or locomotive, or a chimney of a building, within the corporate limits, without proof that it was in fact a nuisance, need not now be considered. Taking judicial notice, as must be done, the Chicago river is situated in the midst of the city where a dense population exists, and near which much of the business of the city is transacted, it might be held "dense smoke," such as comes constantly from smoke-stacks of boats plying the waters of that river that use the common soft or bituminous coal for fuel, is a public nuisance *per se*. But it is unnecessary to pass on that question now. It is admitted, by stipulation of record, "the effect of the emission of dense smoke is detrimental to certain classes of property and business within the limits of the city, * * * and is a personal annoyance to the public at large within the city," and that brings the "nuisance" against which the ordinance is leveled precisely within the definition of a public nuisance that may be abated by public prosecution. Declaring or omitting to declare it a "public" nuisance does not change the fact. That which is the cause of offence would be held to be a public or a private nuisance, as the fact is. Some things, without proof, will be declared to be public nuisances *per se*, and others will be so declared because the proof shows they are in fact public nuisances. It makes no difference how it is made to appear, so it does appear the thing sought to be abated by a public prosecution is a public nuisance.

The case being considered has many features in common with *North Chicago Railway Co.* v. *Lake View,* 105 Ill. 207.

In that case it was clearly conceded that under a general grant of power over nuisances like the one in question, the town or municipal authorities have no power to pass an ordinance declaring a thing a nuisance which, in fact, is clearly not one. "But," it was said, "in doubtful cases, where a thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power like the one we are considering, their action, under such circumstances, would be conclusive of the question." Accordingly it was held the use of steam by the North Chicago Railway Company as motive power in operating its railway along and over one of the public streets in the town of Lake View, contrary to the provisions of the ordinance of the town, was *per se* a nuisance. In the case being considered, the effect of what defendant did in running his steam tug-boat on the river, within the corporate limits of the city, is admitted, and what was done did create a "nuisance," in the language of the ordinance. At common law a nuisance was anything that worked hurt, or inconvenience, or damage. A public or common nuisance was that which affected the public, or was an annoyance to the king's subjects at large. Precisely that is the character of the "dense smoke" emitted from defendant's steam tug-boat. Its effect was detrimental to some classes of property and business within the city, and was a personal annoyance to the public at large. Defendant was therefore properly held to have been guilty of creating a "nuisance," and was subject to the penalty or fine imposed by the ordinance.

It is stipulated this court may take notice of the size and commercial importance of the city of Chicago, and the court may, of its own motion, take judicial notice of what is generally known,—that is, that the city of Chicago is situate near the great bituminous coal fields of the State, and that much

of the fuel used by the multitude of manufactories in the city which produces the "dense smoke" of which complaint is made, is the common soft coal.   In view of the magnitude of the interests involved, it is suggested it will not do to allow the common council to place an embargo on all the interests that have to use this coal.   It may be that some, and perhaps a very great, inconvenience would be experienced by a rigid enforcement of the provisions of this ordinance.   How that may be this court can not know. ⋅ What powers the city council may exercise under the general law or under its police powers, is a question of law to be determined by the courts; but when the city council will exercise the powers with which it is clothed, rests in its legislative discretion, and the consequences that may flow from the enforcement of ordinances enacted within powers conferred, rest alone upon the body enacting them, and with which the courts can have no concern.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*