Bromwell, J.
This cause comes into this court on petition in error filed by-plaintiff to reverse and set aside a finding and judgment of the police court of the city of Cincinnati, growing out of -an action for an alleged violation of the so-eallecl “smoke ordinance” in said city, in which action plaintiff in error was found guilty of violating said ordinance and was sentenced to pay a fine of $25 and the cost of the proceedings.
The ordinance under which said arrest was made was passed by council of the city of Cincinnati and became a law, if valid, April 12, 1907, and is as follows:
“To Regulate the Emission of Smoke Within the City of Cincinnati, to Provide a Color Scale for the Measurement of the Degree of Darkness of Such Smoke, to Provide a Penalty for the Violation of the Ordinance, and to Provide for a Smoke Inspector’s Department.

“Be it ordained by the Council of the City of Cincinnati, State of Ohio-.

“Sec. 1. That for the purpose of determining by comparison the degree of darkness of smoke emitted within the city of Cincinnati, a color scale of measurement shall be and the same is hereby adopted as follows: One thickness of gray glass of sufficient capacity to cut off sixty per cent, of the light from a flame having the lighting power of sixteen candles shall be taken as the basis of said scale, and four thicknesses of such glass shall be known and designated as No. 1 scale.
“Sec. 2. That the emission or escape within the city of Cincinnati, of smoke of a greater degree of darkness than No. 1 scale from any smoke stack, chimney or other part of any boat, locomotive, stationary engine, steam rollers, steam derrick, steam pile driver, steam shovel, tar kettle, or other similar machine or contrivance, or-of any building or premises, except for a period of, or periods aggregating, six minutes in any one -hour during Avhich the fire box is being cleaned out or a new fire being built therein, shall be deemed, and the same hereby is declared, a nuisance.
“Sec. 3. Any person, firm, association or corporation, or -any employe thereof, who shall create or cause the nuisance set *19 forth in Section- 2 of this ordinance, or shall permit or suffer the same to exist, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty-five dollars nor more than one hundred dollars for the first offense; and not less than fifty nor more than two hundred dollars for the second offense; and for a third or any subsequent offense, the’ offender shall be fined not less than one hundred dollars nor more "than three hundred dollars p,nd imprisoned not less than ten or more than thirty days; and- each day whereof such nu-isanee shall be created shall -constitute a separate offense; provided, however, that the increased penalty for a second or subsequent offense shall not .be imposed unless such second or subsequent offense shall have been' permitted upon- the same premises upon which the first offense was committed.”
Section 4 provides for the creation of a smoke inspector’s department, consisting of inspectors, prescribing their duties and fixing their compensation and terms of office. Section 5 repeals the previous ordinance on the same subject, and Section 6 declares the time, May 4,- 1907, at which the ordinance under consideration shall take effect. -
The affidavit or complaint on'which plaintiff in error was arrested charges—
“That one Cornelius Burkhardt, president and general manager of the Gibson Hotel, 421-427. Walnut street, on or about the 7th day of June, A. D. 1907,'at the city and county aforesaid, did unlawfully permit the emission and escape from a certain smoke stack located at 421-427 Walnut street of smoke of a greater degree of darkness than four thicknesses of a gray glass, one thickness of which is sufficient to cut off sixty per centum of the light from a flame having a lighting power of sixteen candles, for periods aggregating more than six minutes in one hour.”
Before. proceeding to trial Burkhardt moved to quash the affidavit and proceedings thereon, which motion was overruled, as was also a demurrer which he then filed to said affidavit and proceedings. Burkhardt then- pleaded not guilty and went to trial. At the conclusion of the evidence on behalf of the city, plaintiff in error made a motion to dismiss, which motion was also overruled, as was also his motion for a new trial. *20 Proper exceptions being taken to the action of the court overruling said motions and demurrer, Burkhardt filed his petition in error in this court seeking to reverse said conviction.
Eleven grounds of reversal are stated in the petition in error, but counsel for Burkhardt rely principally upon three reasons, viz:
1. That Section 2 of said ordinance is illegal and void because it makes the emission of smoke of a specified degree of darkness a nuisance per se, without regard to whether any one is injured or annoyed thereby or not. '
2. That Section 3 of said ordinance does not provide for prosecution or conviction of an officer of a corporation whose stack emits smoke. The corporation, “or any employe thereof,” if at fault, may be prosecuted thereunder, but not an officer thereof.
3. Burkhardt did not permit or suffer the emission of smoke complained of within the meaning of the ordinance.
Under the first of these grounds plaintiff in error claims that the city council had no power to pass Section 2 of the ordinance, and that said section is unreasonable in its provisions. More specifically it is claimed that council, in the absence of power granted to it by the Legislature for the purpose, had no authority to declare any act to be a public nuisance.
In Woods on Nuisance, Section 4, page 13, we find a nuisance defined as “something done, or something omitted to be done, which has the effect of prejudicially and unwarrantably affecting the enjoyment of the rights of another person.”
The same author, on page 23, cites from the opinion in Attorney-General v. Stewart (19 N. J. Eq., 415), the following:
“Any trade or business, lawful in itself, which, from the place or manner of carrying it on, materially injures the property of others or affects their health or renders, the enjoyment of life physically uncomfortable, is a nuisance.
Also, page 34:
“Public nuisances, strictly, are such as result from the violation of public rights'and, producing no special injury to one *21 more than another of the people, may be said to have a common effect and to produce a common damage. ’ ’
Page 46:
“Whether a particular occupation, act or thing has been dedared a nuisance or not is a matter of small importance. If it comes within the rules that have been established by the courts and such as have been dictated by the highest wisdom and soundest public policy and is'productive of the ill results that characterize these wrongs, it is a public injury and will be punished as such although the offense is new and has never been specifically classified as such. ’ ’
Page 47:
‘ The question is not, whether an 'act has been declared to be, but does it come within the idea of, a nuisance? If so it is a nuisance, though never before held so; if not, it is not a nuisance though held so in a thousand instances before.”
Page 682 (citing Dennis v. Eckhard):
“I can not find authority in the law for saying that a thing which fills the atmosphere that others have a right to live in with offensive smoke and odors, stifles .the breath, produces nausea and headache, drives children from their playgrounds and men from ■ their gardens, prevents the drying of clothes and the ventilation of houses, darkfens the sunlight and converts pleasant residences into prison houses in dog days, and defiles carpets, curtains and dinner plates with deposits of soot and dirt, even though such results were only occasional, should be permitted.”
It would seem the citations 'above, taken from one of the leading text-book writers upon the subject' of nuisance, would leave little doubt as to the right of our legislators to protect, by suitable legislation, the public from-the injurious effect of the so-called smoke nuisance, apd- there is no doubt that there are in force in many cities valid ordinances which are successfully being enforced against this evil. The increasing consumption of soft coal for manufacturing purposes in all the large cities of the country and the resulting clouds of dense and injurious smoke has, during the last few years, created a *22 demand on the part of the citizens of these manufacturing centers for improved scientific methods and apparatus for the prevention of smoke. This demand has resulted in laws being passed either by the state Legislature, by the municipal authorities under permission given them by the Legislature, or by municipal authorities acting without such permission, express or implied.
These sources of authority have naturally produced laws or ordinances differing from each other and a corresponding difference in the decisions of the courts of different states. A few of those decisions are cited below, but in reading them it must be remembered that they mostly hang upon the question of whether the legislative body (in most cases the city council), has the right to determine and declare what smoke shall be considered a nuisance or not.
In the case of Langell v. The City of Bushnell, 197 Ill., 20, (the state law of Illinois authorizing municipal councils to declare what is a nuisance), the second and third syllabi are:
“2, If a thing is in its nature, or because forbidden by law, a nuisance, or if, in its nature, it may be a unisance, although there might be an honest difference of opinion on that point, the determination of the council on that point that it is a nuisance is conclusive.
“3. Trades, occupations, etc., which in their nature are not nuisances, but which may become so by reason of their locality, surroundings or the manner in which they are conducted, etc., can not be arbitrarify declared to be nuisances but only and under the circumstances they are so in fact. ’ ’
On page 26 the court said:
“Nuisance may be thus classified: 1. Those which in their nature are nuisances per se, or are so denounced by the common law or by statute; 2. Those which in their nature are not nuisances, but may become so by reason of their locality, surroundings or the manner in which they may be conducted, managed, etc.; 3. Those which in their nature may be nuisances, but as to which there may be honest differences of opinion in impartial minds.
“The power granted by the statute to the governing bodies of municipal corporations to declare what shall be nuisances and *23 to abate the same, etc., authorizes such bodies to conclusively denounce those things falling within the first and third of these classes to be nuisances, but as to those things falling within the second class the power possessed is only to declare such of them to be nuisances as are in fact so. ’ ’
In the case of Harmon v. The City of Chicago, 110 Ill., 400, the'second syllabus is:
“2. An ordinance of the city of Chicago that ‘the o#ner or owners of any boat or locomotive engine, and the person or persons employed, as enginéers or otherwise, in the working of the engine or engines in said boat, or- in operating such locomotive, and the proprietor, lessee and occupant of any building, who shall permit or allow .dense smoke to issúe or -be emitted from the smoke stack of any such boat or locomotive, or the chimney of any building within the corporate limits, shall be fined,’ etc., held to be valid and enforcible.”
The third syllabus is:
“If the effect of dense smoke emitted from the smoke stack or chimney is detrimental to certain classes of property and business within the limits of a city and is a personal annoyance to the public at large within, the city, it is a public nuisance whether so declared by ordinance or 'not. Unless such, in fact, the act of declaring it will not make it a public nuisance.”
After discussing the question as to whether the emission of dense .smoke >was. a nuisance per -sc,, whether declared so or not, the court said (page 411) : ■ ..
“This court will take judicial notice of the fact that the city of Chicago is organized under the general act to provide for the incorporation of cities and villages in force July 1, 1872, and, by law, the city council may, amopg its other legislative powers, have authority ‘to declare what shall be á nuisance and to abate the same and to impose fines upon parties who.may create, continue or stiffer nuisances to exist.’ ”■
In the case of Green v. Lake, 50 Miss., 451, was involved the question of the authority of the council of the city'of Aberdeen to declare by ordinance certain establishments to be nuisances. The cpurt, on page 456, said:
*24 “The charter of Aberdeen confers on it power to ‘prevent and remove all nuisances.’ We agree with counsel in the assertion that this grant of power does not authorize the town to declare that to be a nuisance which is not, and destroy property or interfere with individual rights improperly, under the pretense of preventing or removing nuisances; but the town has the power to prevent and remove what comes within the legal notion of a nuisance.”
Joyce on Nuisance, Section 135, says:
“Smoke alone was not a nuisance at common law. It, however, becomes a nuisance where it is of such character as to cause substantial discomfort or inconvenience to another or to materially diminish the value of adjoining property.”
In Marshall Field & Company v. Chicago, 44 Ill. App., 410, the court, held that smoke is a nuisance per se, that it is unnecessary to prove that any annoyance follows its emission or that it was detrimental to any property. The third syllabus of that case is:
“A jury must be presumed to know that smoke from chimneys is, in large cities, both injurious and annoying.”
On page 411, the court cites with approval the language in the case of Munn v. Burch, 25 Ill., 35,.that “courts will not pretend to be more ignorant than the rest of mankind. ’ ’
And,.on the same page, says:
“It is a matter of common knowledge that smoke becomes soot, which falls and blackens where it rests; that it is injurious to vegetation, to many kinds of goods and annoying to people. This common knowledge is so generally diffused in Chicago that no jury could be without it.”
In other words, in the case last cited, the court took the position that it would be warranted in taking judicial notice of the fact that dense smoke in a large city is a nuisance per se.
In the case of The State v. Tower, 185 Mo., 79, the question that was raised was with reference to an act of the Legislature and not as to the authority of council to pass an ordinance upon the smoke nuisance. As will be seen in the discussion *25 hereafter, however, there is a very decided distinction and clear line of demarcation between the two; propositions. The syllabus in the ease referred to (State v. Tower), is as follows:
“1. # * - The rule that statutes must be construed strictly against the state and liberally in favor of the citizens and that courts must adhere to the strict letter of the law, does not require a construction that would render the law nugatory.
“2. The Legislature has'the right to declare that to be a nuisance Which is neither such per se nor was such at common law.
“3. The General Assembly does not invade the judicial power by making that unlawful which' is not inherently a nuisance.
“4. It was entirely competent for the General Assembly to declare the emission of dense, 'opaque smoke into the open air of large and populous cities to be a nuisance per se, as being a constant annoyance to the general public therein and one calculated to interfere with the health and comfort of their inhabitants.
“The Legislature in the exercise of its police powers can declare the emission of dense smoke into the open air of populous cities to be a nuisance, without qualifying it by adding to it that such smoke must injure the property in the neighborhood or interfere- with the comfort or injure the health of the citizens. In the exercise of that power the Legislature is vested with a wide discretion and liberty of choice and the extent to which it is to be exercised in the protection of the health and safety of citizens is within the legislative discretion.”
In the case of Cincinnati v. Miller, 29 W. L. B., decided in 1893 by Judge Gregg of the-police court of Cincinnati, the syllabus is as follows:
“1. An ordinance providing ‘that the owner, lessee or occupant of any building, who shall permit or allow dense smoke to issue or be emitted from the chimney of any building within the corporate limits of a city of the first class, shall be deemed and held guilty of creating a nuisance,’ is authorized by Section 1692a, 88 Ohio Laws, 53, which act is not in violation of Article II, Section 26 of the Constitution, and is constitutional.
“2. To render such ordinance invalid for the reason that it is impossible to comply with its provisions, it must appear clear]/ that the thing required to be done is not within the *26 power of a man to accomplish, otherwise the ordinance, being-valid in other respects, must stand and be obeyed.
“3. A dense smoke emitted from smoke, stacks in the midst of a densely populated city is a nuisance per se. Unless it is a nuisance in fact, the act of so declaring it would not make it a nuisance. Omitting so to declare it, it is none the less a public nuisance. ”
The statute in force at the time this decision was rendered (Vol. 88 Ohio Laws, 53), read as follows:
“That in all cities of the first class such cities shall have the power to regulate and compel the consumption of smoke emitted by the burning of coal, and to prevent injury and annoyance from the same.”
One of the questions raised in this case was as to the constitutionality of the act in the fact that it was limited to cities of the first class, but,we are not interested in that phase of the case as the present statute is entirely different from the law in force at that time.
The ordinance under which Miller was arrested provided—
“The proprietor, lessee or occupant of any building who shall permit or allow dense smoke to issue or be emitted from the chimney of any building within the corporate limits, shall be deemed and held guilty of creating a nuisance,” etc.
Judge Gregg sustained the validity of the ordinance, largely, upon the authority of the case of Harmon v. City of Chicago, 110 Ill., 400, cited herein, in which case, as we have shown, there was express authority for the council to declare and determine what should constitute a public nuisance.
In the case of Sigler v. The City of Cleveland, 3 Nisi Prius, 119, the syllabus was:
“Under Section 1692a, Revised Statutes, authorizing municipalities to pass ordinances to regulate and compel the consumption of smoke and to prevent injury and annoyance from the same, a city has no authority to pass an ordinance to prohibit the emission of dense smoke unless such smoke be an injury and annoyance. ’ ’
The ordinance in this' case was as follows:
*27 “Be it 'ordained by the council of the city of Cleveland, that the emission of dense smoke' from any chimney anywhere in the city, or from the smoke stack of any boat, locomotive or stationary engine or boiler within, the limits of the city of Cleveland, shall be deemed and is' hereby declared to be a public nuisance.
The statute in existence at the time this ordinance was passed authorized incorporated' villáges to regulate and compel the' consumption of smoke emitted by the burning of coal and prevent injury and annoyance from the same which, with the exception of the clause “emitted by the burning of coal,” is precisely what the present statute is upon the same subject. It will be seen from the' language of the ordinance above that council under said statute assiimed the power to declare the emission of dense smoke, etc., _to be a public nuisance, just as the present ordinance of the city of Cincinnati does. The court said on page 119:
“It is a well established doctrine and rule of law that municipalities have incidental powers and a general right, even in the absence of specific grants from the Legislature, to enact reasonable ordinances for the government of municipalities; but where a special grant of power is made to the municipality by the Legislature, then that grant must be strictly construed and folloived by the city council in enacting any' ordinance predicated upon such grant. The Legislature in the act to which I have referred did not 'authorize the city council to declare smoke a nuisance, but did authorize the etiy to regulate it and to prevent injury and harm from it; but the city by this ordinance, as I have said, makes it a nuisance per se without regard to the resvdts, without any regard to.’whether injury or annoyance followed. * * Will it be contended that the Legislature itself could declare smoke (a necessary and natural result from the use of coal fuel, the use of which is absolutely necessary both to produce power and for heating purposes), a nuisance per se,, without any regard to whether or not it injures property or annoys any person? Smoke was not a nuisance at common law. If, now, the emitting of vsmoke is to be a criminal offense, •it must be so by statute only and by ordinance only within the power granted.”
In the next case which I cite below, the court, referring to the last ease cited, calls attention to the fact that the ordinance in *28 that ease was held unconstitutional on two grounds: first, that the Legislature did not empower municipalities to declare smoke per se a nuisance; and, secondly, that the ordinance was invalid for uncertainty, and that it was unconstitutional by reason of the fact that the penalty for violating it was excessive and that, immediately after this ordinance had been so declared unconstitutional, the Legislature enacted Section 1692f-l which gave the city council the power to determine what should be a nuisance and to abate the same, and to impose fines upon parties who might create, continue, or suffer a nuisance to exist. The case to Avhich I am now referring is that of The City of Cleveland v. Malm, 5 Nisi Prius, 203, decided in 1898 by the police court of Cleveland, which held as follows:
“The ordinance of the city of Cleveland providing that the emission of ‘dense smoke from any chimney anywhere in the city, or from the smoke stack of any boat, locomotive or stationary engine or boiler, within the limits of the city of Cleveland, shall be deemed and is hereby declared to be a public nuisance,’ and providing for punishment thereof, is invalid, because :
“First. The ordinance is indefinite, uncertain and vague.
“Secondly. The city council transcended its power, granted to it by the Legislature, in declaring the emission of smoke per se a nuisance.
“Thirdly. The city council exceeded its grant of power in that it prohibits the emission of smoke under any and all circumstances, and at any time, instead of regulating the same.
“The word ‘dense’ as used in the ordinance, is uncertain, indefinite and vague. What may appear dense in the eyes of one may not appear so in the eyes of another. ’ ’
This decision was upon an ordinance of the city of Cleveland substantially as follows:
‘ ‘ The emission of dense smoke. from any chimney anywhere in the city or from the smoke stack of any boat, locomotive or stationary engine or boiler, within the limits of the city of Cleveland, shall be deemed and is hereby declared to be a public nuisance and the owner, lessee, engineer, fireman, or any other person or employe having charge or control of or operating any boat, locomotive, or stationary engine or boiler, manufactory, *29 building or premises within the corporate limits of said city who shall cause or permit dense smoke to issue from any smoke stack or chimney thereof, or connected therewith, shall be deemed and held guilty of creating a public nuisance and shall, for the first offense, be fined,” etc.
A case directly in point, and which is one of the leading eases on this subject cited by the text-book writers and referred to in the encyclopedias, is City of St. Paul v. Gilfillan, 36 Minn., 298, the syllabus of which is as follows:
“1. The charter of the city of St. Paul confers no power upon the city council to declare' what- acts or omissions shall constitute a public nuisance.
“2. Ordinance No. 618 * * * declaring the emission of dense smoke from smoke stacks and chimneys a public nuisance is unauthorized and void.”
The court said, on page 299:
“The prosecution rests upon the assumption (a) that the city has the authority to declare the acts or omissions complained of to be a piiblie nuisance; and.(&) that it is sufficient to warrant a conviction, if it appear by the evidence that the defendant has done or suffered to be done the things forbidden by the ordinance. There is no enabling statute or provision in the charter authorizing the city council to define and declare what shall constitute a nuisance, nor to enact ordinances to prevent and punish the acts complained of without any lawful investigation or inquiry into the question whether they constitute a public nuisance. ’ ’
The court distinguishes this case from that of Harmon v. Chicago, 110 Ill., 400, supra, where a prosecution under a similar ordinance was sustained, by showing, in the latter case, the council was expressly authorized by the Legislature “to declare what shall be a nuisance and to’ abate the same and to impose fines upon parties who may create, .continue or suffer nuisances to exist;” and upon the facts stipulated in the record in that case sufficient appeared to establish the existence of a nuisance in fact.
In the case of Joyce v. Wood, 78 Ky., 386, the city council of Covington, Ky., had declared that a certain lot covered with *30 stagnant water was a nuisance and ordered its abatement. On page 388 the court said:
‘ There was no judicial determination that there was a nuisance and no opportunity offered the owner of the lot to contest that matter. Under the exercise of the police power it may be conceded that municipalities can declare and abate nuisances in cases of necessity, without citation and without adjudication as to whether there is in fact a nuisance. But whenever the action of a municipality in declaring and abating a nuisance, goes so far as to fix a burden upon the owner of the property, he is entitled to be heard upon the question as to the existence of the nuisance. ’ ’
In the case of Ison v. Manley, 76 Georgia, 804, the syllabus is:
“The charter of the city of Griffin gives it no .authority to define a nuisance, but it has only the power to prescribe the mode and manner of trying all charges thereof, and the state law must determine what a nuisance is which may be so abated. ’ ’
The ordinance involved in this case declared — ■
‘ ‘ That any obstruction or encroachment to the street, sidewalks or alleys of the city, shall be held and deemed a nuisance and may be abated as such.”
See, also, Wreford v. People, 14 Michigan, page 43.
In the case of The City of St. Louis v. Heitzeburg Packing Co., 141 Mo., 375, the syllabus is:
“1: It is not competent for a city to declare that a nuisance which is not such in fact.
“2. Smoke alone was not a nuisance at common law nor has it been declared to be such by any statute of this state. Before it can be held to be a nuisance it must be shown to be such by proof; and that implies that it must be shown to be an annoyance and injury to a portion of the inhabitants of the state.
“3. An ordinance which declares the emission into the open air of black, dense smoke or thick, gray smoke from any establishment, locomotive or premises within the corporate limits of St. Louis, irrespective of the quantity and length of time it is emitted, to be a nuisance, and punishes the owner or occupant of such premises as for a misdemeanor, is unreasonable and void. ’ ’
*31 (N. B. The ordinance'we are now considering attempts to meet the two requirements of the last syllabus above by fixing as a time or duration an aggregate of six minutes in an hour and of quantity by fixing the umbrascope test or scale).
The court in the above case said, on page 383:
“By its charter * * * the city of St. Louis is authorized to declare, prevent and abate nuisances on public or private property and the causes thereof. It will be observed that it was not specifically empowered to declare the emission of thick smoke within the city limits to be a nuisance per se. Notwithstanding the broad terms in which the power is given to declare nuisances, it is not competent for the city to declare that a nuisance which is not so in fact.” Citing Lakeview v. Letz, 44 Ill., 81; Des Plains v. Poyer, 123 Ill., 348; Dillon on Munic. Corp., 374; River Rendering Co. v. Behr, 77 Mo., 91.
In the case of Whitcomb v. Springfield, 3 C. C., 244, the validity of an ordinance of the city of Springfield which attempted to prohibit the sounding of a certain kind of steam whistle was involved. At that time there was no express provision of the statute giving municipal councils the authority such as is now contained in Section 1536-100, clause 3, “to regulate and prohibit the use of steam whistles.” The city, however, claimed that under a clause,in Section 1692, which enumerated the powers, of municipalities, the authority was given to council to pass ordinances “to prohibit riots, gambling, noise and disturbance,” etc.; and, under another clause “to prevent injury and annoyance from anything * *, * offensive * * * and to cause any nuisance to be abated.”
The court decided against the city on both these contentions, using the following language (page 246) :
“Municipal corporations derive their power from the statutes passed by the General Assembly in which all legislative power 'is vested by the Constitution. That body may delegate to cities and villages the power to make by-laws and ordinances, which, when authorized, have the force, in favor of the municipality, and against those bound thereby, of laws passed by the Legislature. An ordinance which does not fall within the grant of power, express or necessarily implied, is void,.”
*32 Following this decision the Legislature enacted a law giving ' council the express authority to regulate and prohibit the use of steam whistles.
As further examples of the strictness of construction upon powers delegated to municipal corporations see Stem v. Cincinnati, 6 Nisi Prius, 15; Frank v. Cincinnati, 7 Nisi Prius, 146; Thornhill v. Cincinnati, 4 C. C., 354; Columbus v. Fed. Gas. Co., 2 N. P. — N. S., 283; Pres. Bk. of Chillicothe v. Mayor, etc., 7 O., pt. 2, 31.
Having thus given the leading authorities to which our attention has been called upon both sides of this question, let us now examine the statutory provisions in regard to this subject of smoke nuisance, and apply the well established principles of construction to their interpretation.
We will first compare Section 1536-100, clause 3, as it now stands since the adoption of the municipal code with the provisions on the same subject matter in force prior to said adoption.
In the third edition of Bates’ Statutes, containing all the laws in force January 1, 1902, we find the following separate and distinct paragraphs or clauses:
“Sec. 1692, clause 3. To prevent injury or annoyance from anything dangerous, offensive or unwholesome and to cause any nuisance to be abated.
“Sec. 1692a. Cities and incorporated villages shall have the power to regulate and compel the consumption of smoke emitted by the burning of coal and to prevent injury and annoyance from the same.
“Sec. 1692/ (1). To determine what shall be a nuisance and to abate the same; to impose fines upon parties who may create, continue, or suffer a nuisance to exist.”
In the last revision (municipal code), parts of the provisions of these three sections were consolidated into one section (1536-100, clause 3), and a part omitted and not re-enacted. Thus we find the first section above (1692, clause 3), is re-enacted in the new provision; that the second (1692a), has been curtailed by omitting the words “emitted by the burning of coal”; and the third (1692/ [1]) has not been re-enacted.
*33 Now this last section which is thus omitted in the revision is the one section alone which in'direct language gave municipal corporations .the authority to determine what shall be a nuisance and to impose fines upon parties ivho may create, continue or suffer a nuisance io exist. Its omission, therefore, in the existing law, becomes important in view of the fact that Section 2 of the ordinance now before us undertakes to declare that certain acts shall constitute a public nuisance. ITad the council authority to do so under the rules of construction, and in the face of the fact that the power' to determine what shall constitute a nuisance Ayas either unintentionally omitted in the revision-or intentionally withdraAvn?
A somewhat similar question arose upon AAdiat was undoubtedly an unintentional omission by the Legislature in leaving out the last clause of paragraph 1 of Section 5521, viz., “or a nonresident of the state” in the enumeration of the grounds for attachment. These words had for years been in the attachment laws and there were 'certain cognate sections referring to nonresidents which remained unchanged during the time said words were thus omitted. In the two years covering the period of elimination of these words, two cases, Gorham v. Steinau, 7 Nisi Prius, 478, and Auerbach v. Swadner, 18 C. C., 389, qere decided, the respective courts holding to a liberal construction and reading back into the law the omitted Avo'rds. But Avhen the same question was raised in thé case of Hough v. Dayton Manufacturing Co., 66 O. S., 433, the Supreme Court said, on page 434:
“We recognize the rule that AA’here a statute is of doubtEul meaning, other statutes' in ikiri materia will be looked to in aid of construction^ But aarj can'not forget'that Section'5521 alone provides the grounds of attachments. * * * If on the face of the amendment in question there is doubt of its meaning, or even as to the subject-matter, through want of proper punctuation or confusion in the order of \Aurds, and the doubt can be removed and the intent gathered by reference to cognate provisions, it would be our duty to use them in aid of construction to learn and carry out the legislative intent. But there is nothing doubtful, ambiguous or confused in the *34 wording of the provision. There is no doubt of the meaning of every word used and that each word is in its proper place and the entire statement of the ground of attachment perfectly clear. In such case there is no room for construction. The omission was apparently intended, because the most apt words were used to indicate it.”
And on page 437:
‘ ‘ Where the words of a statute are plain, explicit and unequivocal, a court is not warranted in departing from their obvious meaning, although from considerations arising outside of the language of the statute it may be convinced that the Legislature intended to enact something different from what it did in fact enact.”
Following the rule of construction thus laid down we must conclude that the Legislature intended, for reasons satisfactory to itself, in the adoption of the municipal code, to withdraw from municipal corporations the authority previously conferred upon them to declare what is a public nuisance, and if that construction is correct we must conclude that the attempt by Section 2 of the present ordinance to declare that the emission or escape of smoke of a certain density is a public nuisance is without authority of law.
As still further showing the strictness with which grants of power to municipal corporations have been construed by our courts, I call attention to the following, decided by our Supreme Court:
In the case of Bloom v. The City of Xenia, 32 O. S., 461., the court, on page 464, said (distinguishing between construction to be placed upon doubtful acts of the Legislature and doubtful ordinances of a municipality) :
“By the terms of the organic law,' ‘the legislative power of the state’ is declared to be ‘vested in the General Assembly.’ This grant of power is general in its terms, not special; it embraces all such legislative power as the people of the state could, under the federal Constitution, confer — the whole ‘legislative power of the state.’ The limitation upon the exercise of this po^er thus broadly conferred, are special, and are to be found in other parts of the same instrument. When, therefore, the *35 power of the Legislature to enact a given law is disputed, the proper question is whether such exercise of legislative power is clearly prohibited by the .Constitution. The grant of power being general, the question is as.to the existence of a limitation arising from express prohibition. ,
"In marked contrast to this view of the General Assembly, is that which the law takes of the municipal corporation. Its power is strictly limited. It has that which is expressly granted or clearly implied; and no other; and doubtful claims to power are resolved against it.”
In the ease of Markley v. Village of Mineral City, 58 O. S. 430, the village council sought to convey, by resolution, certain real estate which it had attempted to buy for the purpose of giving it to the plaintiff as a donation to indued him to locate a manufacturing plant in the village. It was claimed that the authority of a municipal corporation to acquire by purchase and hold real estate was limited to such as was to be legitimately used by the corporation; that no express power was given to purchase real estate for the purpose of making a donation; and that no such implied power was intended.
On page 439 the court said:
"We suppose it to be settled that our municipalities have such capacities and powers and such only, as are expressly granted, and such as may be implied, as essential to carry into effect those which are expressly granted, and that doubtful claims to power are resolved against the corporation.”
And on page 440:
"The chief function of a municipality being to regulate local governmental affairs because they may be dealt with better by people interested than by a distant central power, we can not assume a purpose to invest such corporation with the powers or capacities of individuals, or of private corporations for' objects not pertaining to municipal rule, since that would be to pervert the institution from its legitimate ends ancl-to-Require of it duties which it is not adapted satisfactorily to execute and which are not necessary to enable it to discharge the appropriate functions and duties of local administration. ’ ’
In the case of Ravenna v. The Pennsylvania Company, 45 O. S., 118, the syllabus is:
*36 “1. Municipal corporations, in their public capacity, possess such powers, and such only, as are expressly granted by statute, and such as may be implied as essential to carry into effect those which are expressly granted.
“2. A municipal corporation has not the power, by ordinance, to compel a railroad company to maintain, at a street crossing within the corporate limits, a watchman, for the purpose of giving warning to passers-by of the approach of trains.”
In this case the village of Ravenna undertook by ordinance to compel the Pennsylvania R. R. Co. to maintain at a street crossing in the village a watchman. Objection was made that the ordinance was void by reason of the council having no authority to pass it; that the authority to pass an ordinance must be expressly granted or necessarily implied from express grants of authority and that the power in this case was neither so expressly granted nor could it be implied.
The court said, on page 121:
“That the power to compel railroad companies to maintain watchmen at dangerous crossings is in the nature of police power and that such power exists in the General Assembly may be conceded. But it does not follow that because the Legislature has such power it may be exercised by municipal corporations. Such corporations, being created for the convenience and economy in government and to aid the state in legislation and administration of local affairs, are all subject, in their public capacity, to the control of the state. As a result of this limitation this corporation caai hot possess the power referred to unless the same has been conferred by statute. * * * Power to enact such an ordinance would not be inherent in the council. Except as to incidental powers, such as are essential to the very life of the corporation, the presumption is that the state has graaited in clear and unmistakable terms all it has designed to grant at all. Doubtful claims to power are resolved against the corporation. ’ ’
And on page 122:
“It is not enough to show that municipal corporations have been given poorer to protect property and life. To maintain this ordinance it must be shown that they have been given the power to employ the agency here ■ involved to accomplish the object. ”
*37 And on page 123:
“Municipal corporations are capable of exercising police powers; but when tbe question is whether such an organization has authority to enact a particular ordinance it must be shown that the power to do the particular thing in the way marked out has been given either expressly or by clear implication.”
See, also, the case of Doming v. Cleveland, 22 C. C., p. 1, syllabi 2 and 3, as follows:
‘2. Whether any particular thing or act is not permitted by the law of the state must always be a judicial question. Therefore the question, what is and what is not a public nuisance, must be judicial; and it is not competent to delegate its determination to a local legislative or administrative board.
“3. Neither the Legislature nor a city council can make a stream of water a nuisance by simply declaring it so. Its character in this regard can only be determined by legal proceedings. And when in fact the stream is not a nuisance, no authority to remove or divert it is derived from an arbitrary order' or ordinance declaring it to be such. ’ ’
Our attention is called by the prosecuting attorney to a case recently decided by the Supreme Court of Indiana, viz., Bowers v. City of Indianapolis, 81 N. E. Rep., 1097, decided October 11, 1907, in which that court held that an ordinance of the city-of Indianapolis which declared that “the emission of dense black or gray smoke from any smoke stack or chimney * * * shall be .deemed and declared to be a public nuisance” was valid;' but it will be noticed that the court in stating its reasons for this opinion called attention to the fact that power had been expressly given by an act of the state Legislature to cities “to declare what shall constitute a nuisance.”
The court said:
“It is very clear that it was the purpose of the General Assembly to authorize cities to exercise a legislative power in the denouncement as public nuisances of some things which were not within the purview of the criminal legislation of the state, or, in other words, nuisances per se.”
We fully agree with the reasoning and conclusions of the Supreme Court of Indiaha in this case, but, unfortunately i<?r *38 the contention of the prosecutor, that case and the one under present consideration are distinctly different. In the Bowers case council had authority to declare dense smoke a nuisance per se; in our case no such authority is vested in the council.
In this connection 'the court desires to call attention to a most interesting article by Mr. Eugene McQuillan, of St. Louis, upon the subject of abatement of the smoke nuisance in large cities, published in the 46th Central Law Journal, page 147, in which most of the cases upon this subject are collated and discussed in a very comprehensive and intelligent manner.
But it may be contended that even if council of the city of Cincinnati has no express authority to declare the smoke described in this particular ordinance to be a public nuisance per se, it has power, nevertheless, under the provisions of Section 1536-100, clause 3, “to regulate and compel the consumption of smoke and prevent injury and annoyance from the same, ’ ’ to make such regulations by ordinance as will enable it to punish ■persons who shall cause or permit the emission of smoke of the kind described in Sections 1 and 2. We do not think so. This is a penal ordinance and, like all other penal ordinances and statutes, must be construed strictly in favor' of the person accused of violating them. By Section 3 of this ordinance the offense consists in creating or causing the nuisance set forth in Section 2, but if council had no authority to declare the emission or escape of the smoke described in said Section 2 to be a public nuisance, then Section 3 becomes also invalid.
If council had authority to declare such smoke to be a public nuisance, the effect would be to dispense with any necessity of proof that such smoke actually created any injury or damage to the public, and the court would not interfere with the legislative discretion in any matter of detail prescribed by the council in carrying into effect such provisions as it might deem necessary; but in the absence of such power the question of whether the emission of smoke becomes in any particular instance a public nuisance will either require the production of evidence to show the actual damage or injury or else require the court to determine whether the emission of such smoke is recognized by *39 •law as a nuisance, either in common law or under the statute of the state. In either case the present ordinance would be defective in assuming to place in the hands of a legislative body what properly belongs to the jury or the court, or both together.
This ordinance makes no provision for. determining whether or not the emission of the smoke described therein is actually injurious to the public, and it is impossible for the court to take judicial notice of whether such smoke would constitute a nuisance or not. It has been held in a number of authorities that the court may take cognizance of, and recognize judicially, that dense, black or gray smoke is' a nuisance, but there is nothing in this ordinance which shows that the smoke described therein is dense, black or gray. The language is, in fact, exceedingly vague, both in the ordinance and the affidavit upon which the arrest was made in this case. The latter charges that the dedefendant “ unlawfully permitted the emission and escape from a certain smoke stack * * * ' of smoke of a greater degree of darkness than four thicknesses of a gray glass,” etc. Now what is meant by a greater degree of darkness than four thicknesses of a gray glass ? It is evider. 1 that this language can convey no clear conception to the mind of anyone of what the council intended.
It is with some hesitation, and’ very considerable reluctance, that we reach the conclusion at which we have arrived, as' we recognize the great necessity for the enactment of proper laws, either by statute or ordinance, or both, to control the undoubted evils growing out of the careless use of fuel in cities in which a considerable amount of manufacturing is done. But earnest as our desire may be for the accomplishment of these ends, we must not overlook the fact that in a criminal prosecution like the present the defendant is entitled to the rights given to him by the Constitution and to a strict construction of the law which he stands charged with violating.
Holding, as we do, that the first three sections of this ordinance are invalid, it follows that we must reverse the judgment of the police court and order the discharge of the defendant.
Worthington & Strong, for plaintiff in error.
Benton S. Oppenheimer, contra.
We might add that even if our conclusion had been the opposite, there were enough serious errors upon the record to have warranted the court in granting a motion for a new trial; but as the finding of the invalidity of the first three sections of the ordinance disposes of the case we deem it unnecessary to go into details as to the other errors referred to.
It will also be observed that the finding of this invalidity reaches only to the first three sections of the ordinance. So much of Section 4 as makes it the duty of the smoke inspector to prosecute all violations of Section 2 of this ordinance, and permits other residents of Cincinnati to institute such prosecutions would of course become inoperative, but as Section 4, independent of this particular provision, would be sufficient to constitute a valid ordinance and this section is not so related to the first three sections as to indicate that it was the intention of the council to have it stand or fall with them, the court is if the opinion that Section 4, with the exception of the clauses referred to above, is valid.
It is therefore the order of the court that the defendant in this case be discharged, the costs to be paid by the city.