The City of Chicago, Defendant in Error, *vs.* The Pennsylvania Company, Plaintiff in Error.

*Opinion filed December 21, 1911.*

1. Municipal corporations—*police power of city is a continuing one.* The power of a city to enact police regulations demanded for the public health, comfort, safety or welfare is a continuing one, of which the city cannot divest itself· by contract.

2. Same—*a city does not have same right to regulate elevated structures as it does grade crossings.* The rights of a city with reference to the regulation of the operation of a railroad on an elevated structure are not the same as where the railroad crosses the streets at grade.

3. Same—*city cannot compel a railroad company to light street beneath an elevated structure.* A city has no power to compel a railroad company to light the street beneath an elevated structure erected by the company with the authority of the city, even though the structure renders the street darker than it would otherwise be. (*Chicago* v. *Union Traction Co.* 199 Ill. 259, distinguished.)

4. Same—*Chicago ordinance requiring lights at crossings is invalid as applied to elevated structures.* Section 1997 of the municipal code of Chicago, concerning lights at crossings, is invalid in so far as it applies to railroads which cross above the streets on elevated structures.

Writ of Error to the Municipal Court of Chicago; the Hon. Sheridan E. Fry, Judge, presiding.

Loesch, Scofield & Loesch, for plaintiff in error:

The track elevation ordinance of June 18, 1900, is a contract between the city of Chicago and the Pennsylvania Company and cannot be changed without consent of both parties, and additional burdens not provided in said ordi-

nance cannot be cast upon the railroad company except in the reasonable exercise of the police power of the city of Chicago. *Quincy* v. *Bull,* 106 Ill. 337; *Belleville* v. *Railway Co.* 152 id. 171; *People* v. *Telephone Co.* 192 id. 307; *Telephone Co.* v. *Telephone Co.* 199 id. 324; *Madison* v. *Traction Co.* 235 id. 346.

Section 1997 of the municipal code is not a valid exercise of the police power of the city of Chicago. *Keil* v. *Chicago,* 176 Ill. 137; *Landberg* v. *Chicago,* 237 id. 112; *Cairo* v. *Bross,* 101 id. 475; *Altamont* v. *Railway Co.* 184 id. 47.

The ordinance in question is an alleged exercise of police power in the interest of public safety. If the power to impose the burden of lighting a street intersection upon the railroad exists when it crosses a street at grade, it ceases when the said railroad is elevated and the dangers of the grade crossing are eliminated. *Blanchard* v. *Railroad Co.* 126 Ill. 416; *Railway Co.* v. *Halbert,* 179 id. 196; *People* v. *Railroad Co.* 235 id. 374.

A city has no power, in the absence of statutory provision, to pass an ordinance requiring railroad companies to light their tracks within the city limits. *Shelbyville* v. *Railroad Co.* 146 Ind. 66.

The city having assumed the duty of lighting its streets, cannot, by ordinance, relieve itself of such duty and place the burden upon an individual or private corporation. *Freeport* v. *Isbell,* 83 Ill. 441.

To put the burden of lighting the subway in question upon the railroad company is the taking of its property for a public use without just compensation. *Railroad Co.* v. *Bloomington,* 76 Ill. 447.

To permit the enforcement of this ordinance when all lighting is done by general taxation is to deny to the railroad company the equal protection of the laws, in contravention of the constitution of Illinois and the fourteenth

amendment to the constitution of the United States.   Sutherland's Notes on U. S. Const. 728.

EDWARD J. BRUNDAGE, Corporation Counsel, (CHARLES M. HAFT, of counsel,) for defendant in error:

' A statute or ordinance relating to the health, safety, comfort, convenience or good order of the people of the municipality is a proper exercise of the police power. *Railway Co.* v. *Chicago,* 140 Ill. 309; *New Orleans* v. *Louisiana,* 115 U. S. 661; *Beers* v. *Massachusetts,* 97 id. 32; *Slaughter House cases,* 16 Wall. 62; *Wilke* v. *Chicago,* 188 Ill. 414; *People* v. *Railway Co.* 200 U. S. 561; *Thorpe* v. *Rutland,* 27 Vt. 149.

An ordinance requiring a railroad company to light a crossing relates to the health, safety, comfort, convenience and good order of the community, and it is therefore a proper exercise of the police power. *Village* v. *Railroad Co.* 60 Ohio St. 136; *Railroad Co.* v. *Sullivan,* 32 id. 152; *Railroad Co.* v. *Crawfordsville,* 72 N. E. Rep. 1025.

Independently of any statutory authority, a city has implied power to protect the health, safety and comfort of its inhabitants. *Gundling* v. *Chicago,* 176 Ill. 340.

Requiring a railroad company to light that portion of the street beneath its elevated structure is a reasonable regulation by the city of the use of its streets. *Baltimore* v. *Railroad Co.* 166 U. S. 681.

The principles involved in this case are practically identical with those involved in *Chicago* v. *Traction Co.* 199 Ill. 259, and we submit that that case is decisive of the questions here involved.

Mr. JUSTICE COOKE delivered the opinion of the court:

The city of Chicago brought suit against the Pennsylvania Company in the municipal court to recover a penalty for failure to maintain lights in the subway over which the lines of said railroad cross Twenty-second street, in the city

of Chicago. The city based its right to recover on section 1997 of its municipal code of 1905, which is as follows:

"1997. *Lights at crossings.*—Every person or corporation owning or operating any steam, elevated or street railway whose track or tracks cross or intersect at, above or below grade any of the streets within the city, shall, and they are hereby required to, provide at their own expense proper and sufficient lights, and care for the same, at all such crossings or intersections. Such lights shall be of such kind as may be approved by the commissioner of public works."

Section 1998 provides for a fine of not less than $10 nor more than $100 for a failure to comply with the provisions of the preceding section. The city secured judgment in the municipal court and a fine of $50 was assessed against the railroad company, and this writ of error has been sued out to review the record of the municipal court.

There is no dispute in regard to the facts. For many years prior to 1900 the plaintiff in error or its predecessors had operated a steam railroad on the surface of Stewart avenue, which runs north and south and across Twenty-second street. This occupation of Stewart avenue prior to 1900 was authorized by various city ordinances which are not involved in this proceeding. On June 18, 1900, the city council of the defendant in error passed an ordinance requiring the plaintiff in error to elevate its tracks from Twenty-first street southwardly to Fifty-third street. This ordinance provided for subways to be constructed by plaintiff in error in certain streets, among which was Twenty-second street. The character of the subway provided for in Twenty-second street was specified in the ordinance, and it has been constructed in accordance therewith and accepted by defendant in error. The distance from the surface of the roadway to the railroad structure above is 13.5 feet. The evidence shows that as a result of the overhead crossing the street beneath the same is somewhat darkened

in the daytime and is rendered darker at night than it otherwise would be; that lights are required in the said subway to protect the public from the danger of collisions, and also from the danger of coming in contact with iron posts erected in the roadway to support the superstructure of the railroad; that after the completion of the elevation of its tracks in 1908 plaintiff in error maintained lights in said subway until January 15, 1909, when it ceased to light said subway and has since refused to do so. Plaintiff in error offered to prove that defendant in error appropriated a large sum of money annually for street lighting and that plaintiff in error had paid the taxes assessed against it for such purposes. This evidence was excluded by the trial court.

Plaintiff in error contends that the track elevation ordinance of 1900, when accepted and complied with by it, became a contract, which cannot be changed without the consent of both parties, and that defendant in error cannot cast additional burdens upon it unless it be in the reasonable exercise of the police power; that even if the power to impose the burden of lighting the street intersections exists when it crosses a street at grade, it ceases when the railroad is elevated and the dangers of the grade crossing are eliminated; that defendant in error has no power, in the absence of a statutory provision, to pass an ordinance requiring railroad companies to light their tracks within the city; that the defendant in error having assumed the duty of lighting its streets, cannot relieve itself of such burden by an ordinance placing the burden upon the railroad company; that to place the burden of lighting this subway upon the railroad company is a taking of its property for public use without just compensation and is a denial to the company of the equal protection of the laws, in violation of both the State and Federal constitutions.

If the city has the right to impose this duty upon plaintiff in error it is only because of the general police power

possessed by it.    No express grant has been given by the
State which authorizes it to require a railroad company to
maintain lights at any particular place.    There is, however,
a general police power possessed by the city by which all
persons, natural or artificial, may be subjected to such rea-
sonable restrictions and requirements as are found to be
proper and requisite to secure the health, comfort and con-
venience of the people.    (*City of Chicago* v. *Union Trac-
tion Co.* 199 Ill. 259.)    The general police power thus
possessed by a city is a continuing power, and is one of
which a city cannot divest itself, by contract or otherwise.
It follows, therefore, that if the defendant in error has the
right to impose this duty upon plaintiff in error as a valid
exercise of its police power, the contention that the track
elevation ordinance constitutes a contract which is violated
by section 1997 of the municipal code cannot be sustained.
Whether, in any event, a city has the power, without an
express grant from the legislature, to require railroads to
maintain lights at grade crossings is argued at considerable
length.    In the view we take it is not necessary to deter-
mine that question.    The railroad does not cross Twenty-
second street at grade.    The conditions there are essentially
different from those of a grade crossing, and the rights of
the city in reference to the regulation of the operation of
a railroad on an elevated structure are not the same as at
grade crossings.    This was recognized by the city when it
provided in the elevation ordinance that when the railroad
should be operated on the elevated structure the provisions
of all the ordinances of the city of Chicago relating to the
speed of trains, the length of trains, the number of cars to
constitute a train, and the maintenance of gates, flagmen,
watchmen, signals and signal towers, and the ringing of
bells, should cease.    Even if the power exists in the city
to require railroads to furnish lights at grade crossings, it
would not necessarily follow that it existed when the grades
had been separated and the railroad was being operated on

an elevated structure. The statute requiring a bell to be rung for eighty rods before reaching a crossing has no application to a crossing under a viaduct, where the travel is over the elevated structure and is out of the way of the trains passing over the tracks. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Halbert*, 179 Ill. 196; *Blanchard* v. *Lake Shore and Michigan Southern Railway Co.* 126 id. 416.

In *People* v. *Illinois Central Railroad Co.* 235 Ill. 374, the city of Chicago sought by *mandamus* to compel the railroad company to reconstruct the pavement and repair the sidewalks in a subway in one of the streets in the city which passed under the elevated structure of the railroad company. In that case the railroad company had been required to elevate its tracks by an ordinance of the city, and at the subway in question was required by the elevation ordinance to pay for the cost of constructing suitable approaches to the depressed street and of paving the street under the railroad tracks and the approaches thereto, and to construct suitable sidewalks. The city had repeatedly notified the railroad company that the pavement and sidewalks in the subway had become so worn as to be unsafe and to require immediate reconstruction, and demanded that it reconstruct the pavement and repair the sidewalks. This the railroad company refused to do and a petition for the writ of *mandamus* was filed by the city. The city in that case contended that it had the right, in the exercise of its police power, under section 8 of the act in relation to fencing and operating railroads, to require this to be done by the railroad company. In passing upon that question we said: "Here the street in question did not cross the railroad tracks but passed under them. Appellee [railroad company] is required to maintain its structures supporting the tracks in such condition as to render it safe for persons and property passing underneath them, but nothing it could do in the way of maintaining and re-paving the streets

would afford any protection from trains to persons or property passing underneath its tracks. It is not denied that when the appellee elevated its tracks it restored the streets and sidewalks to proper condition, and in our opinion its duty ended there. The future maintenance of the streets was not imposed upon the corporation by its charter nor by any law passed in the exercise of the police powers of the State." While the precise question to be determined here was not involved in that case, the facts are analogous and the reasoning in that case applies here.

The police power is limited to the enactment of laws demanded for the public health, comfort, safety or welfare of society. (*Ruhstrat* v. *People,* 185 Ill. 133.) By elevating its road-bed and separating its grade from the grade of the street all danger of collisions between trains of the plaintiff in error and persons or property was entirely eliminated. In passing along the street in the subway beneath the tracks of plaintiff in error no danger is encountered by reason of the operation of the trains of plaintiff in error. Under the exercise of the police power the only excuse which could be given to support the right of the city to require plaintiff in error to maintain lights in this subway would be, that the same were necessary for the protection of the public on account of the operation of the railroad through the running of its trains. That the public is no longer in danger because of the operation of the trains of plaintiff in error is conceded. It is only contended that defendant in error has the right to require plaintiff in error to maintain lights at this subway because the building of the structure required by the elevation ordinance has darkened the street. Plaintiff in error has a right to maintain its tracks across Twenty-second street by reason of the license given it by defendant in error to do so. Under the elevation ordinance it had a right to erect the structure it has erected across Twenty-second street. The city has no more right to require plaintiff in error to maintain lights

in this subway merely for the reason that its structure has tended to darken the street, than it has to require the owners of buildings along the line of any street to keep the street lighted because the buildings, on account of their height, have tended to darken the street and make it less safe for travel. To require plaintiff in error to maintain such lights would be to deny it the equal protection of the laws.

Defendant in error, in support of its contention, relies chiefly upon the case of *City of Chicago* v. *Union Traction Co. supra.* But that case is of no controlling force here. In that case it was clearly shown that the street accumulations had a deleterious effect upon the public health and comfort, and that on account of the manner in which the road-bed was constructed and the rails were laid in the street, the dirt and filth had a tendency to collect between the rails and be retained there. As the existence of the rails in the street and the peculiar construction of the road-bed tended to retain the street accumulations and prevent them from flushing off to the sides of the street, it was properly held that the city had the power, under the exercise of its police power, to require the traction company to remove such accumulations. The decision of the case rested upon the fact that the rails caused an accumulation and retention of agencies of disease which were injurious to the public health.

Section 1997 of the municipal code, in so far as it applies to railroads crossing on elevated structures above the grades of streets, is invalid.

The judgment of the municipal court is reversed.

*Judgment reversed.*