### WASHINGTON TERMINAL CO. v. DISTRICT OF COLUMBIA.

(Court of Appeals of the District of Columbia. Submitted April 7, 1920. Decided May 3, 1920.)

#### No. 3145.

1. **Railroads** ⊙⟺99(2)—**Statute requiring railroad to pay for lighting streets under viaducts is valid.**

   The provision of Act May 26, 1908, requiring the Washington Terminal Company to pay for lighting streets under the viaducts of the company, is a valid exercise of the police power, where it appeared that the viaducts covered a considerable area of the streets, and were supported by columns placed within the streets, so that more lighting was required than would have been necessary in the absence of the viaducts.

2. **Railroads** ⊙⟺99(2)—**Police power authorizes requiring railroad to pay for entire lighting cost under viaduct.**

   Where the construction of a railroad viaduct required more light for the streets thereunder than would have been necessary in the absence of the viaduct, it was not an abuse of the police power to require the railroads to pay the entire cost of lighting the streets under the viaduct, not merely the cost of the excess lighting required by the viaduct.

3. **Railroads** ⊙⟺99(2)—**Regulation requiring lighting streets adjacent to tracks held invalid.**

   Act May 26, 1908, in so far as it requires the railroad to light streets adjacent to its tracks, is invalid as applied to streets along the private right of way of the railroad, in the absence of any showing that the presence of the railroad required additional lighting for the streets.

4. **Statutes** ⊙⟺64(4)—**Lighting adjacent streets by railroads held separable from requirement of lighting under viaducts.**

   The invalid provision of Act May 26, 1908, requiring the Washington Terminal Company to light streets adjacent to its tracks, is separable from the other requirement of the act that company light streets under its viaducts.

5. **Interest** ⊙⟺13—**Allowable on liquidated sum for which statute creates liability.**

   In an action by the District of Columbia to recover from a terminal company the cost of lighting streets under viaducts, as authorized by Act

⊙⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

May 26, 1908, the liability is fixed by statute, and the action is for a liquidated sum, so that interest was properly allowed.

Smyth, Chief Justice, dissenting in part.

Appeal from the Supreme Court of the District of Columbia.

Action by the District of Columbia against the Washington Terminal Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Geo. E. Hamilton and J. J. Hamilton, both of Washington, D. C., for appellant.

C. H. Syme, Corp. Counsel, and F. H. Stephens, Asst. Corp. Counsel, both of Washington, D. C., for appellee.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District for the plaintiff, appellee here, in the sum of $10,223.22, with interest, representing the entire cost of lighting portions of H, K, L, and M streets and Florida Avenue Northeast, passing at grade under the overhead viaduct construction of the Terminal Company, and the entire cost of lighting such portions of First and Second Streets East as border on the Terminal Company's right of way.

The act of May 26, 1908 (35 Stat. 287), provides:

"That hereafter the Washington Terminal Company, its successors, or transferees, shall pay to the District for the lighting of the streets, avenues, alleys and grounds over and under which its right of way may cross, as well as for the lighting of those streets, avenues, alleys and grounds bordering on its right of way, under the direction and control of the Commissioners; and in case of default in payment of such bills, actions at law may be maintained by the District of Columbia against such Terminal Company or its successors or transferees therefor."

As required by the acts of February 12, 1901 (31 Stat. 774), and February 28, 1903 (32 Stat. 909), eliminating grade crossings in the District of Columbia, the tracks of the Terminal Company were elevated above the streets, and at their intersection therewith were carried over on viaducts, supported by two rows of columns standing in the streets. The viaducts over H, K, L, and M streets and Florida avenue are 80 feet long, and vary in width from 135 to 787 feet; that is to say, the roadway underneath is 80 feet wide and from 135 to 787 feet long.

The evidence tended to show that much additional lighting was necessary under these viaducts for the safety and convenience of the public, but it did not appear that those portions of First and Second street bordering on the Terminal Company's right of way were appreciably or substantially affected by its proximity.

The Terminal Company requested the court to instruct the jury to return a verdict in its favor; that there could be no recovery against it for light furnished on Second street, shown under the evidence to have cost $2,060.82, or for the lighting on First street, costing $358.61. A further instruction was requested to the effect that recovery could be had for no greater sum than was reasonably necessary to be expended in providing additional or excess lighting necessitated by the

Terminal Company's viaducts and elevated right of way. Each of these instructions was refused.

[1] The law applicable to this case is to be found in recent decisions of the Supreme Court of the United States, where it has been held that railway companies may be required under the police power to make the streets and highways crossed by their tracks reasonably safe and convenient for public use, without charge to the public. In Northern Pac. Ry. v. Duluth, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. Ed. 630, it was held that a municipality of the state of Minnesota might require a railroad company to repair a viaduct constructed by the state for the opening of the railroad, notwithstanding a contract relieving the railroad from making repairs thereon for a term of years. The court pointed out that the police power, being inherent and constant, may not be contracted away, and hence that laws passed in its exercise do not contravene the federal Constitution, even though obedience be required without compensation. In Cin., I. & W. Ry. v. Connersville, 218 U. S. 336, 31 Sup. Ct. 93, 54 L. Ed. 1060, 20 Ann. Cas. 1152, it was held that a railway is not deprived of its property without due process of law because, in a street opening proceeding, it is not awarded, in addition to the value of the land taken, the cost of the new structure which must necessarily be erected to carry its right of way over the street, as required by the safety and convenience of the public. The court said:

"The railway company accepted its franchise from the state, subject necessarily to the condition that it would conform at its own expense to any regulations, not arbitrary in their character, as to the opening or use of streets, which had for their object the safety of the public, or the promotion of the public convenience, and which might, from time to time, be established by the municipality, when, proceeding under legislative authority—within whose limits the company's business was conducted."

The Supreme Court, in Chi., Mil. & St. P. Ry. v. Minneapolis, 232 U. S. 430, 34 Sup. Ct. 400, 58 L. Ed. 671, affirmed a judgment of the Supreme Court of Minnesota requiring a railroad company to build, at its own expense, a bridge made necessary by the construction on the part of a municipality of a canal connecting two lakes within the limits of a public park. That court also, in Great N. Ry. v. Clara City, 246 U. S. 434, 38 Sup. Ct. 346, 62 L. Ed. 817, reiterated the doctrine that railroad companies may be required, under the police power, at their own expense, to make reasonably safe and convenient for public use the streets and highways crossed by their tracks. And in a very recent decision by that court, made on December 8, 1919, in the case of Pac. Gas & Elec. Co. v. Police Court of the City of Sacramento, 251 U. S. 22, 40 Sup. Ct. 79, 64 L. Ed. ——, there was sustained an ordinance of the city of Sacramento making it the duty of street railways operating along any streets of the city, without cost to the city, during the months of June, July, August, September, and October of each year, and at such other times as might be necessary to keep the dust laid, to sprinkle the surface of the streets occupied by the railway, between the rails and tracks and for a sufficient distance beyond the outermost rails, so as effectually to lay the dust and prevent the same

from arising when the cars were in operation. The court observed that the regulation "was inherently within the police power" and that there was no showing of an unreasonable exercise of that power.

In the present case, the right of way of the Terminal Company intersects streets of the city, and the tracks of the company are carried over those streets on viaducts, which naturally and inevitably affect and render abnormal conditions underneath. Congress has imposed upon the Terminal Company the burden of meeting the expense incident to the proper protection of traffic under those viaducts, and this is no more than the company impliedly agreed to do when it constructed them. As we view the question, the test is whether the Terminal Company's occupation of these streets renders necessary additional precautions for the safety and convenience of the public. It is of no importance, in our view, that the tracks of the company are above the surface of the streets, so long as they occupy the streets and their occupancy interferes with the normal use of the street by the general public.

Appellant cites City of Chicago v. Penn. Co., 252 Ill. 185, 96 N. E. 833, 36 L. R. A. (N. S.) 1081, Ann. Cas. 1912D, 400, in which it was ruled that an ordinance of the city of Chicago was invalid in so far as it applied to railroads crossing the streets on elevated structures, even though such structures darkened the streets. The court was of the view that the city had no more right to require the railway company—

"to maintain lights in this subway merely for the reason that its structure has tended to darken the street, than it has to require the owners of buildings along the line of any street to keep the street lighted because the buildings, on account of their height, have tended to darken the street and make it less safe for travel."

This doctrine, in our view, is inconsistent with the reasoning of the Supreme Court of the United States in the cases to which we have referred. The difference between the occupation by a railroad company of a public street and the occupation by a private owner of land bordering on that street is fundamental. The railroad company, when it occupies the street, invades a public right of way, and does so upon the implied condition that it will conform to all reasonable requirements for the safety and convenience of the public. The private owner, on the other hand, is occupying his own premises, and, so long as his structures are lawful, he owes the public no greater duty than other owners of private property. The railroad company, if it occupies a public street, must protect the public, so far as possible, against the danger and inconvenience occasioned by such occupancy, and relieve the public from the cost of such protection.

[2] The Terminal Company contends that, in no event, should it be required to pay more than the additional expense of lighting the streets under these viaducts. In Mo. Pac. Ry. v. Omaha, 235 U. S. 121, 35 Sup. Ct. 82, 59 L. Ed. 157, where the railway company was required to construct a viaduct over its right of way to carry the ordinary street traffic and a street railway, it appeared that a viaduct

sufficient to carry ordinary traffic on the street would cost about $30,-000, whereas the viaduct ordered would cost about $80,000; the increase being largely due to the requirements of the street railway traffic. The court said:

"The means to be employed to promote the public safety are primarily in the judgment of the legislative branch of the government, to whose authority such matters are committed, and so long as the means have a substantial relation to the purpose to be accomplished, and there is no arbitrary interference with private rights, the courts cannot interfere with the exercise of the power by enjoining regulations made in the interest of public safety which the Legislature has duly enacted."

After observing that it might have been "more fair and equitable to require the street railway company to share in the expense of the viaduct," the court continued:

"In the exercise of the police power, it may happen, as it often does, that inequality results which the law is powerless to redress. It is only in those clear and unmistakable cases of abuse of legislative authority that the court is authorized, under sanction of the federal Constitution, to enjoin the exercise of legislative power. As we have said, we do not think this case presents that character of abuse because the street railway company is not required to share in the expense of the erection of this viaduct."

It appearing that conditions resulting from the viaducts of the Terminal Company in the present case justified Congress in invoking the police power, we are not prepared to declare the particular manner in which that power has been exercised arbitrary or unreasonable. Congress was dealing with actual conditions. The viaducts not only crossed over and darkened the streets, but the surface of the streets were incumbered with the columns that supported the overhead structures; the aggregate result being a very substantial interference with the use of such streets. Having all these conditions in mind, it would be going far to rule that Congress abused its power by requiring the Terminal Company to meet the cost of lighting the streets its structures had rendered unsafe.

In a former suit by the District against the Terminal Company, based in part upon the statute here involved, the Terminal Company's demurrer was overruled by the trial court and judgment entered for the District. This court, being of the view that "the burden is upon the one assailing the law to show that there is, in fact, no necessity for the protection sought to be extended," affirmed the judgment. Wash. Terminal Co. v. D. C., 36 App. D. C. 186, 191. The court further said:

"Undoubtedly, if, in the operation of the Terminal Company's lines of railroad, a danger exists from which the public is not adequately protected by the lighting of the streets in a manner commensurate with the needs of the city if the railroad were not present, the company could be compelled, through the exercise of the police power, *to furnish the necessary protection by properly lighting its tracks at the points where the danger exists.*"

It thus appears that the court then recognized the liability of railroad companies—

"to make streets and highways crossed by the tracks of such companies rea-sonably safe and convenient for public use, and this at their own expense." Great N. Ry. Co. v. Clara City, 246 U. S. 434, 437, 38 Sup. Ct. 346, 62 L. Ed. 817.

[3, 4] As to the provision requiring the Terminal Company to pay the cost of lighting those portions of First and Second street bordering on its right of way, a more difficult question is presented. There the Terminal Company is occupying its own right of way, and that occu-pancy affects these streets to no greater extent than the occupancy for business purposes of other premises bordering thereon. In other words, the evidence fails to show that the proximity to these streets of the company's right of way appreciably affects either the safety or convenience of the public. It therefore is difficult to perceive upon what theory the company may be required to meet this particular ex-pense. There being no real or substantial reason for invoking the police power to protect the public along this right of way, we are constrained to rule that Congress exceeded its power when it under-took thus to burden the company. This requirement, however, is separable from the other requirements of the act of 1908, and it is clear to us that Congress would have enacted those requirements ir-respective of this. El Paso & N. E. R. Co. v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. 106; United States v. Cella, 37 App. D. C. 423.

The contention of the Terminal Company that there was excessive lighting of the streets under its viaducts may be dismissed, with the observation that this question was submitted to the jury and deter-mined in favor of the District.

[5] Lastly, it is contended that the court erred in instructing the jury to allow interest on the monthly statements rendered the Terminal Company. The statute fixed the liability, and, the suit being for a liq-uidated sum, interest was properly allowed.

Since the judgment included the cost of lighting portions of First and Second streets, a charge we have found to have been beyond the power of Congress to impose, it must be reversed, with costs, and the cause remanded for a new trial.

Reversed and remanded.

SMYTH, Chief Justice (dissenting in part). I concur in all parts of the foregoing opinion excepting that which holds that the company is liable for the entire expense of lighting the streets under the via-ducts. I think there is no more authority in Congress to require the company to pay for any lighting under the viaducts not made neces-sary by its acts than to require it to pay for the illumination of a block on Pennsylvania avenue many squares away. Such in principle is our holding in Washington Terminal Co. v. District of Columbia, 36 App. D. C. 186, 191, where this language is used:

"Undoubtedly, if, in the operation of the Terminal Company's lines of rail-road, a danger exists from which the public is *not adequately protected by the lighting of the streets in a manner commensurate with the needs of the*

*city if the railroad were not present,* the company could be compelled, through the exercise of the police power, to furnish the necessary protection by properly lighting its tracks at the points where the danger exists."

The part of the quotation which I have underscored sustains the contention of the company in the present case. The latter is required to light the streets only so far as it may be necessary to protect the public from a danger which "the lighting of the streets in a manner commensurate with the needs of the city if the railroad were not present" would not guard it against.

The decisions of the Supreme Court cited in support of the majority opinion do not, as I read them, warrant the conclusion reached, but, on the contrary, when properly understood, are in conflict with it. In the Missouri Pacific Case the contention was made by the railroad company that the street railway company should be compelled to pay a portion of the expense of constructing the viaduct over the railroad company's tracks. The court said:

"Where a number of railroads have contributed to the condition which necessitates such improvement in the interest of public safety, it is not an unconstitutional exercise of authority, as this court has held, to require one of the companies interested to perform such work at his own expense."

Applying this principle to the case in hand, the court observed that if the street railway company was somewhat responsible for the dangerous condition which the city sought to remove by compelling the railroad itself to erect a viaduct, it was none the less within the power of the city to compel the railroad alone to bear the expense of the structure. But it will be noted that the theory upon which this was held was that the railroad company had created, in whole or in part, a dangerous condition, against which the city sought to guard the public.

The same doctrine is recognized and enforced in the Sacramento Case. Under an ordinance of the city of Sacramento the street railway company was required to sprinkle the streets occupied by it "between the rails and tracks and for a sufficient distance beyond the outermost rails thereof, so as to effectually lay the dust and prevent the same from arising *when the cars are in operation.*" Here again the condition which the company was required to deal with was produced by the operation of its cars.

In the Clara City Case the only question presented was with respect to the power of the state to require the railroad company to lay a sidewalk over its tracks at a grade crossing in the city. This was necessary, as the opinion of the court shows, for the purpose of protecting those who had occasion to cross from dangers resulting from the operation of the company's cars. The walk was to be on the company's right of way. Neither the city nor any one else, without the company's permission, had any right to build the walk there. Of course, an order directing the company to construct the walk was within the police power.

If the streets in the case before us need additional lighting on account of the tracks running above them, the company should pay for

it; but, if they do not, there is, in my judgment, no power in Congress to make the company pay for the lighting—to pay for what it is the duty of the District to supply.